# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## Case No. 21-3143

Jiangsu Beier Decoration Materials Co., Ltd.

*Appellant*

**v.**

Angle World LLC

*Appellee.*

## BRIEF OF APPELLANT

APPEAL FROM THE ORDER DATED OCTOBER 28, 2021 OF THE UNITED
STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA AT DOCKET NO. 2:21-CV-02845-AB GRANTING
APPELLEE'S MOTION TO DISMISS

Richard A. Kaye (GA No. 409313)
**BARNES & THORNBURG, LLP**
3475 Piedmont Road, N.E., Suite 1700
Atlanta, Georgia 30305
Telephone: (404) 264-4086
E-mail: Rich.Kaye@btlaw.com

William J. Burton (PA No. 322269)
**BARNES & THORNBURG, LLP**
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3447
Facsimile: (302) 300-3456
E-mail: William.burton@btlaw.com

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................2

STATEMENTS OF THE CASE ...........................................................2

I.    IMPORTANT FACTUAL BACKGROUND PRESENTED TO THE
      DISTRICT COURT...........................................................2

      A.    The Parties Exchanged Various Writings and Entered into a
            Binding and Enforceable Agreement Containing an Arbitration
            Provision...........................................................2

      B.    The Parties Litigate Their Disagreements.............................7

      C.    JBDM Seeks to Enforce the Arbitration Award in the Eastern
            District of Pennsylvania and Angle World Seeks Dismissal of that
            Action ...........................................................11

      D.    The District Court's Decision .........................................13

SUMMARY OF THE ARGUMENT ....................................................14

STANDARD OF REVIEW ...........................................................16

ARGUMENT ...........................................................................17

I.    THE DISTRICT COURT FAILED TO RECOGNIZE THE ROBUST
      CONSENSUS AROUND WHAT CONSTITUTES AN EXCHANGE
      OF LETTERS UNDER THE CONVENTION .........................................17

      A.    The Holding in Standard Bent Glass Corp. Controls and the
            Parties' Exchange of Letters and Conduct Confirm there was an
            Agreement to Arbitrate...................................................18

      B.    The District Court Erred in Holding the Parties' Communications
            Did Not Amount to an Exchange of Letters...............................20

II.   The District Erred by Not Considering the Dispositive Ruling of the
      Beijing Fourth Intermediate People's Court which should be granted full
      faith and credit under the principle of international comity.........................22

CONCLUSION ...........................................................................27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams Outdoor Advert. Ltd. P'ship by Adams Outdoor GP, LLC v. Pennsylvania Dep't of Transp.*,
930 F.3d 199 (3d Cir. 2019) ...............................................................................16

*China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*,
334 F.3d 274 (3d Cir. 2003) ......................................................... passim

*Clientron Corp. v. Devon IT, Inc.*,
125 F. Supp. 3d 521 (E.D. Pa. 2015)...............................................25

*Davis v. Samuels,*
962 F.3d 105 (3d. Cir. 2020) ..............................................................16

*Drakulich v. Drakulich*,
482 A.2d 563 (1984)...........................................................................26

*Glencore Ltd. v. Degussa Engineered Carbons L.P.*
848 F. Supp. 2d 410 (S.D. N.Y. 2012) ........................................ 21, 23

*Harris v. Green Tree Fin. Corp.*,
183 F.3d 173 (3d Cir. 1999) ..............................................................16

*Hilkmann v. Hilkmann*,
816 A.2d 242 (Pa. Super. 2003) .......................................................26

*Hilton v. Guyot*,
159 U.S. 113 (1895) ...........................................................................24

*Jordan v. Fox, Rothschild, O'Brien & Frankel,*
20 F.3d 1250 (3d Cir. 1994) ..............................................................17

*Pritzker v. Merrill Lynch,*
7 F.3d 1110 (3d Cir. 1993) ................................................................16

*Sandvik AB v. Advent Int'l Corp.*,
220 F.3d 99 (3d Cir. 2000) ................................................................18

*Sinha v. Sinha,*
    834 A.2d 600 (Pa. Super. 2003) ............................................................26

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.,*
    453 F.2d 435 (3d Cir. 1971) .................................................................26

*Standard Bent Glass v. Glassrobots Oy,*
    333 F.3d 440 (3d Cir. 2003) ........................................................ passim

**Statutes**

9 U.S.C. § 1 ............................................................................................1

9 U.S.C. § 201 ........................................................................................1

9 U.S.C. § 207 ......................................................................................17

28 U.S.C. § 1331 ....................................................................................1

# JURISDICTIONAL STATEMENT

The District Court properly exercised federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Federal Arbitration Act, 9 U.S.C. § 1, et seq. and 9 U.S.C. § 201 et seq., over Jiangsu Beier Decoration Materials Co., Ltd.'s ("JBDM") Petition to Confirm Arbitration Award against Angle World LLC, pursuant to an agreement to arbitrate falling under the Convention of the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, *adopted* June 10, 1958 (the "Convention"), *acceded to be the United States*, Sept. 30, 1970, 21 U.S.T. 2517, 330 U.N.T.S. 3. *See* 9 U.S.C. § 201, *acceded to by the People's Republic of China* Jan. 22, 1987, which is incorporated into the Federal Arbitration Act (the "FAA").

The District Court issued a final Judgment that disposes of all of JBDM's claims. *Appendix*, *Volume I* ("*Appx") at 4*. JBDM timely filed a notice of appeal. *Appx1*.

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

(1)  Did the District Court err as a matter of law in interpreting and applying *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 284 (3d Cir. 2003) in a way that permitted it to conclude, as a matter of law, that the parties' initial emails, hand-delivered MOU and the parties' subsequent emails did not constitute "an exchange of letters" as defined by the Convention?

(2) Did the District Court err as a matter of law by failing to consider and grant comity to the ruling of the Beijing Fourth Intermediate People's Court finding a valid agreement to arbitrate the parties' dispute?

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court and counsel is unaware of any previous or pending appeals before this Court that arises out of the same case or proceeding.

## STATEMENTS OF THE CASE

This Appeal centers on the District Court's dismissal of JBDM's Petition to Confirm Arbitration Award filed in the United States District Court for the Eastern District of Pennsylvania which sought enforcement of an arbitration award (the "Arbitration Award"), rendered by the China International Economic and Arbitration Commission ("CIETAC").

## I. IMPORTANT FACTUAL BACKGROUND PRESENTED TO THE DISTRICT COURT

### A. The Parties Exchanged Various Writings and Entered into a Binding and Enforceable Agreement Containing an Arbitration Provision

The underlying issue in this dispute results from a disagreement JBDM and Angle World had over a U.S. Regional Exclusive Agency Agreement the parties entered into on May 20, 2016. *Appendix*, *Volume II ("SAppx") at 9*. More specifically, in June 2018, JBDM claimed Angle World owed it $1,381,199.72.

2

SAppx145, 173. Angle World disputed and refused to pay this amount to JBDM. SAppx145, 173. In an effort to settle their disputes, the parties drafted and signed, on June 28, 2018, an initial general memorandum of understanding outlining the basic business terms of a settlement. SAppx145, 173. The initial terms contained, among other provisions, a settlement payment schedule for Angle World and a $50,000 upon execution of a final settlement agreement. Following the signing of that initial memorandum of understanding, over the next several weeks, the parties refined their settlement terms in a series of email exchanges and an in-person meetings, as detailed below.

On July 3, 2018, Angle World's accountant sent an email to JBDM with a first revision of the initial memorandum of understanding relating to the payment schedule the parties had initially agreed on. SAppx145. This payment schedule revised the original memorandum of understanding by eliminating the provision requiring a $50,000 payment upon execution of a final settlement agreement. SAppx145-146.

Angle World's accountant outlined a total settlement amount of $522,000 with 6 monthly installment payments of $87,000 to be made on each of July 11, 2018, August 8, 2018, September 5, 2018, October 3, 2018, November 7, 2018 and December 5, 2018. SAppx146, 173. JBDM then revised the memorandum of understanding and emailed its more complete proposal to Angle World on July 11,

2018. SAppx146, 173. JBDM's memorandum of understanding retained the $50,000 payment on execution provision and included, among other things, a CIETAC arbitration provision. SAppx146, 173. After JBDM sent the July 11, 2018 email, the parties met face-to-face and, on July 19, 2018, JBDM sent another revised memorandum of understanding and payment schedule to Angle World based on that meeting via email. SAppx146. That memorandum of understanding was more detailed and complete, retaining both the $50,000 payment on execution provision and the arbitration provision. SAppx146. A new payment schedule was also attached to the email and memorandum of understanding which required the first $87,000 installment payment to be made by Angle World on July 28, 2018, rather than on July 11, 2018, but left the remainder of the schedule unchanged. SAppx146, 174.

Following receipt of the new memorandum of understanding and attached payment schedule, Biao Wang ("Wang"), Angle World's President, responded by email on July 20, 2018, stating he would need to confirm the terms of the memorandum of understanding with a "Jason" (Angle World's Chief Operating Officer Jason Pyon), and inviting JBDM representatives to come to Angle World's office to pick up a final copy of the memorandum of understanding the next day. SAppx146, 174.

On the next day, July 20, 2018, the parties met face-to-face in Angle World's office in China and agreed to strike the $50,000 payment on execution provision from the memorandum of understanding, but made no other changes to the document. SAppx146. Angle World actually made that change to the Word document and printed off a new copy—that memorandum of understanding being the one attached to the JBDM's Petition to Confirm Arbitration Award (the "MOU," the "July 10 Memorandum" or the "710 MoU"). SAppx146, *174-175*. Mr. Wang signed the printed copy of the Agreement on the margin of a random page, but not on the signature block. SAppx175. JBDM representatives returned to their offices, signed and sealed the MOU and returned it to Angle World by express courier service. SAppx175. On July 26, 2018, JBDM confirmed via email to Angle World that the first payment under the final version of the July 10 Memorandum was due on July 28, 2018. Mr. Wang as President of Angle World confirmed the first payment date on the schedule attached to couriered MOU in a reply email on July 27, 2018, which email Wang copied Bob Schecter, an employee in the U.S. reasonable for handling the wire payment transaction. SAppx147, 175. Angle World then made the first installment payment via wire transfer on July 27, 2018, pursuant to the schedule attached to the final MOU. SAppx147, 175. The bank confirmation sent by Angle World to JBDM as proof of payment provides that the 'Purpose of Funds' is "1 of 6 Settlement Payment." SApp175, 210. On August 24, 2018, JBDM sent

an email to Wang and Jason Pyon ("Pyon"), Angle World's Chief Operating Officer, reminding them of the upcoming August 28, 2018 second installment payment due under the terms of the MOU. SAppx147, 176. In response, Pyon stated he was traveling until September 6, 2018, and requested an extension, until September 7, 2018, to make the second installment payment under the MOU. SAppx147, 176. JBDM agreed to provide the requested extension. SAppx147, 176. Pyon, on September 8, 2018, confirmed the wire transfer of the second installment payment and requested JBDM: "[p]lease allow this late payment as per the agreement." SAppx147, 176. The only "agreement" which contained the final payment schedule between the parties, is the final version of the July 10 MOU attached to the Petition.

The bank confirmation sent by Angle World to JBDM as proof of payment provides that the 'Purpose of Funds' is "cost of goods payment number 2." SApp171.

After making the two payments under the MOU, and confirming same in writing, Angle World reneged on its obligations to timely make the remaining four scheduled payments and to pay the balance of the other amounts. SAppx3. In failing to make these payments, Angle World breached its obligations under the MOU. SApp3.

## B.     The Parties Litigate Their Disagreements

In the MOU, JBDM and Angle World agreed all disputes in connection with the MOU would be submitted for arbitration to CIETAC.  SAppx3.  As a result, on May 17, 2019, JBDM commenced an arbitration before CIETAC to enforce the provisions of the MOU.  SAppx3.

After initially participating in the arbitration, Angle World filed the equivalent of a motion to stay the arbitration with the Beijing Fourth Intermediate People's Court objecting to CIETAC's jurisdiction over the parties' dispute and seeking declaratory relief that Angle World: (1) "did not sign the 710 MoU, so the 710 MoU was not concluded and effective;" (2) "Arbitration clauses are independent;" (3) "Angle World has filed a lawsuit against JBDM in the United States of America." *See* SAppx10; SAppx3.  On December 18, 2019 the Beijing Fourth Intermediate People's Court denied Respondent's pleadings and determined that CIETAC was the proper forum to resolve the parties' dispute.  *See* SAppx153.  More specifically, the Beijing Fourth Intermediate People's Court's opinion states:

> Upon investigation, this Court ascertains the following facts.  On July 10, 2018, Angle World and JBDM signed a *Memorandum of Understanding*, and its Article 7 stipulates that: "Any dispute arising from this Memorandum of Understanding shall be settled by and between the two Parties through friendly negotiation.  If the dispute cannot be settled through negotiation, the two Parties shall submit the dispute to the China International Economic and Trade Arbitration Commission Shanghai Sub-Commission for arbitration according to the arbitration rules of the Sub-Commission.  The place of arbitration shall be Shanghai.  The arbitration ruling shall be final and binding on

7

the two Parties, and the losing Party shall compensate the winning Party for the arbitration cost and attorney's fees."

SAppx156 (emphasis in original). The Beijing Fourth Intermediate People's Court then went on to address the argument Angle World has been making at every possible opportunity, including before the District Court: "the 710 MoU was only affixed with the official seal of JBDM, but no signature or seal of Angle World has been affixed, and thus the Arbitration Clause in 710 MoU shall not be deemed to be concluded and effective." SAppx156. The Court rejected this argument stating, "the Court holds the view that *the parties entered into or modified the contracts by email*[.]" SAppx156 (emphasis added). The Court then explained:

> [A]s a matter of fact, both parties have actually performed the 710 MoU, so the 710 MoU is the contract that has actually come into effect, and thus the arbitration clause contained in it shall also be effective. The reasons raised by Angle World cannot be taken as the grounds to deny the effectiveness of 710 MoU. In addition, whether Angle World has filed a lawsuit in the USA is not within the scope of judicial review of arbitration in this case.

SAppx157. Angle World did not appeal the ruling and based on that holding, the case continued before CIETAC.

A live hearing before a CIETAC arbitral tribunal was held on September 7, 2020, during which both parties fully participated with their respective counsel. SAppx4. Both parties filed post-hearing pleadings with the arbitral tribunal. SAppx4. On March 11, 2021, CIETAC issued the Arbitration Award, ordering Angle World to pay JBDM within thirty days of the Award as follows:

a.  USD $624,227.59; and

b.  Interest on USD $624,227.59 at the rate of 0.05% per day (USD $312.11 per day), from September 26, 2018. As of June 25, 2021 (1,003 days), interest has accrued in the amount of USD $313,050.34; and

c.  Attorneys' Fees in the amount of RMB380,000 ($59,204.00 at the exchange rate of 0.1558 RMB/USD.

SAppx4.  In rendering its decision, the Award provides that CIETAC evaluated, at

length, the parties' negotiations. For example, the Arbitration Award provides:

> On July 11, 2018, [JBDM] sent an email to Wang Biao, the representative of [Angle World], and attached a revised memorandum file-named 180710_MOU_ANGLEWORLD (electronic text). The date shown in the revised memorandum is still June 28, 2018. The revised draft of the memorandum added contents such as liability for breach of contract and dispute resolution clauses on the basis of the "June 28 Memorandum." . . . [JBDM's] action was the refusal and counter-offer of the new offer of the "June 28 Memorandum" and subsequent changes in the payment amount and time of [Angle World]. This also explains why the "July 10 Memorandum" shows the date of June 28, 2018, which was questioned by [Angle World]. This also proves the fact that the "July 10 Memorandum" evolved on the basis of the "June 28 Memorandum."

SAppx8, 19.  The Arbitration Award goes on to explain the additional writings

exchanged between the parties:

> On July 19, 2018, the applicant sent an email to the respondent again, and attached a new revised draft of the "July 10 Memorandum" and the payment plan. This version of the "July 10 Memorandum" mainly clarifies the payment time of the disputed payment in the texts. . . . this constitutes a new offer. On July 20, 2018, Wang Biao, [Angle World's] representative, replied to [JBDM]: "It was not prepared according to our negotiations" , "It was beyond the scope of my ability to negotiate with both parties", and "We will not change or accept the final reply until after Jason makes a final reply in accordance with the legal

process.  Party A (referring to [Angle World] in this case—Arbitration Tribunal note) will confirm the final draft, and you will go to Shirley to pick up tomorrow."

SAppx19-20. Addressing whether Wang's email constituted a rejection of the offer, the Arbitration Award states:

> Judging from the above response, although Wang Biao said there were discrepancies between the "July 10 Memorandum" and the discussions, he had no power to make a decision, and that the decision was up to Jason to make.  At the same time, he made it clear that [Angle World] would confirm the final draft and asked [JBDM] to go to [Angle World's] designated person to pick it up the following day.  Therefore, Wang Biao's reply on behalf of [Angle World] ***did not explicitly reject*** [JBDM's] "July 10 Memorandum" draft; otherwise he would not be saying that "Jason will make the final reply."  And according to Wang Biao's reply, it should be on July 21, 2018 when [Angle World] responded to the contents of the "July 10 Memorandum".

SAppx20 (emphasis added).  The Arbitration Award further provides that JBDM mailed Angle World the "July 10 Memorandum" with its own seal affixed. SAppx20.  After JBDM mailed the "July 10 Memorandum," the Arbitration Award further recognizes that Angle World made two of the required installment payments in accordance with the final revised and emailed payment schedule attached as an exhibit to the "July 10 Memorandum," thus ratifying the agreement by its part performance  SAppx3, 20.

**C. JBDM Seeks to Enforce the Arbitration Award in the Eastern District of Pennsylvania and Angle World Seeks Dismissal of that Action**

After more than thirty days following the issuance of the Arbitration Award, and after Angle World had failed to pay the awarded amounts, JBDM filed its Petition to Confirm Arbitration Award. SAppx3, 20. In response, Angle World sought dismissal arguing the Petition failed to plead that Angle World agreed to arbitrate disputes relating to the MOU by way of an exchange of letters or telegrams and failed to supply the Court with an agreement in writing signed by both parties. SAppx116-117. As a result, Angle World argued JBDM failed to show grounds for entitlement to the enforcement of the CIETAC Award and that the District Court lacked jurisdiction. SAppx116-117.

In opposition, JBDM argued Angle World was barred from re-litigating the validity of the MOU, having brought an action in the Beijing Fourth Intermediate People's Court and making similar arguments before CIETAC. SAppx142-145. JBDM also argued that, under Pennsylvania law, the MOU was a valid contract subjecting the parties' disputes to CIETAC's jurisdiction. SAppx145-150. Lastly, JBDM argued that, under the Convention, the detailed factual portion of the CIETAC arbitration award, and the record before the District Court, was more than sufficient to show there was an agreement to arbitrate contained in an exchange of letters between the parties. SAppx150-151.

On October 13, 2021, the Court held a status conference during which it heard oral argument on the pending motion to dismiss. SAppx257. At that argument, Angle World's main argument was:

> [I]n black and white, [Angle World] specifically states in Exhibit C that's not [the agreement the parties reached] and rejects it. He specifically states that this is not what you agreed to, and that is the end of the story. There is no evidence to negate that or refute that, and in fact that evidence negates that there could have been an exchange of letters or communications.

SAppx277-278.[1] In response, JBDM detailed the exchange of communications the parties had, both while negotiating the MOU as well as after the MOU was agreed to, which included Angle World making two payments (and sending email confirming payment and seeking an extension of time to make the second installment) in accordance with the MOU's terms. SAppx279-283.

Angle World, in addressing its remaining argument that the Petition purportedly failed to contain allegations that the agreement to arbitrate was contained in an exchange of letters or telegrams, recognized JBDM could "cure that

---

[1] That argument, as CIETAC noted in its opinion, is contrary to the very document Angle World relies on. As CIETAC stated, in that email Wang stated "he had no power to make a decision, and that the decision was up to Jason to make," thus, the reply "did not explicitly reject" the offer and "it should be on July 21, 2018 when [Angle World] responded to the contents of the July 10 Memorandum[.]" SAppx155.

[by] let[ting] them amend to add that[.]" SAppx269.[2]  Thereafter, the District Court

took the matter under advisement.

### D.    The District Court's Decision

In reviewing whether JBDM had shown there was an agreement to arbitrate,

the District Court properly recognized there was no official document signed by both

parties: "JBDM points to a Memorandum of Understanding from July 10, 2018 . . .

The MOU does contain a clause of arbitration, but it is not signed by Angle World .

. . JBDM does not have any other agreement in writing that is signed by both parties,

as required by the Convention." Appx8.  However, in evaluating the second part of

the analysis—whether there was an agreement to arbitrate contained in an exchange

of letters—the District Court merely stated, "JBDM has not produced any exchange

of letters showing Angle World's agreement to arbitrate, as required by the plain

language of the Convention, nor have they shown any law to suggest that conduct or

face-to-face meetings are relevant to validity under the Convention."  Appx8.  In

doing so, the District Court seemingly did not consider that the extensive amount of

emails exchanged between the parties as well as payment records constituted an

---

[2] Despite the fact this argument was left unaddressed by the District Court in its
opinion, it remains inconsequential.  In addition to the possible curative action Angle
World recognized, the exchange of letters and related analysis was included in the
detailed Arbitration Award attached to the Petition as well as the Beijing Fourth
Intermediate People's Court's opinion, also attached to JBDM's opposition to the
Motion to Dismiss without objection.

"exchange of letters" as required by the Convention.  Such a ruling, as articulated below, is contrary to well-established Third Circuit precedent and must be overturned.

The District Court's opinion also failed to consider JBDM's arguments that: (1) the ruling of the Beijing Fourth Intermediate People's Court sought by Angle World should be granted full faith and credit under principles of international comity; (2) CIETAC's holding regarding jurisdiction; and (3) the July 10 MOU is a valid contract under Pennsylvania law.  SAppx142.  Instead, the Court dealt with all such issues stating merely that, "the arbitration tribunal and Chinese court were following Chinese law and United Nations Convention on the International Sale of Goods ("CISG") . . . [w]hether the agreement is valid under Chinese law and CISG is a different question from the one before the court today: whether the agreement is valid under the Convention."  SAppx8-9.  The District Court's failure to address, and rule on, these legal issues constitutes reversible error.

## SUMMARY OF THE ARGUMENT

This Court should reverse the District Court's grant of Angle World's Motion to Dismiss.  The District Court's opinion granting the Motion to Dismiss constitutes reversible error at least two key respects.

First, the District Court failed to recognize and apply clear judicial consensus concerning what constitutes an exchange of letters under the Convention.  In doing

so, the District Court's opinion failed to consider, reference or explain how several key electronic communications, and part performance, concerning the parties' agreement, weighed into its determination (if at all) that there was no agreement to arbitrate under the Convention. In short, the District Court's opinion improperly and implicitly found the following communications, among others, were insufficient to find an agreement to arbitrate: (1) the June 28, 2018 memorandum of understanding; (2) the July 3, 2018 email from Angle World providing a revised memorandum of understanding containing, among other things, an arbitration provision and new payment schedule; (3) JBDM's July 11, 2018 revisions to Angle World's July 3, 2018 memorandum of understanding; (4) JBDM's July 19, 2018 revisions to the memorandum of understanding based on face-to-face communications between the parties; (5) the July 20, 2018 email from Angle World's President regarding disagreements with the July 19, 2018 memorandum and inviting JBDM to pick up a final copy in their offices the following day; (6) the memorandum of understanding Angle World revised, printed off and handed to JBDM after the parties face-to-face meeting on July 20, 2018; (7) the signed memorandum of understanding JBDM returned to Angle World via express courier following that meeting; (8) the July 26, 2018 email exchange where JBDM confirmed the first payment was due on July 28, 2018 and acknowledgment my Angle World's President; (9) Angle World made its first installment payment on July 27, 2018; (10) the August 25, 2018 email JBDM

sent to Angle World regarding the upcoming August 28, 2018 second installment payment; (11) Angle World's response to the August 28, 2018 email requesting an extension to pay the second installment payment; (12) JBDM's agreement to extend the deadline for the second installment payment; and (13) Angle World's payment of the second installment payment. The District Court's holding that these exchanges of letters were insufficient to find an enforceable agreement under the Convention constitutes reversible error.

Second, the District Court committed reversible error in failing to address and rule on whether the Beijing Fourth Intermediate People's Court's opinion rejecting Angle World's own request for a declaratory ruling upon the validity of the agreement to arbitrate should be considered controlling decisional authority under the principle of international comity. The District Court's failure to acknowledge or address this argument itself constitutes reversible error. Notwithstanding the foregoing, any holding or ruling that the Beijing Fourth Intermediate People's Court's opinion should not be afforded comity is contrary to controlling law and likewise constitutes reversible error.

## STANDARD OF REVIEW

The standard of review of a legal question concerning the applicability of an arbitration agreement and what constitutes an "exchange of letters" is plenary. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 176 (3d Cir. 1999) (citing *Pritzker*

*v. Merrill Lynch*, 7 F.3d 1110, 1113 (3d Cir. 1993)); *Standard Bent Glass v. Glassrobots Oy,* 333 F.3d 440 (3d Cir. 2003). This Court reviews *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Davis v. Samuels,* 962 F.3d 105, 111 n.2 (3d. Cir. 2020); *Adams Outdoor Advert. Ltd. P'ship by Adams Outdoor GP, LLC v. PennsylvaniaDep't of Transp.,* 930 F.3d 199, 205 (3d Cir. 2019). In conducting such a review the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994).

## **ARGUMENT**

## I. **THE DISTRICT COURT FAILED TO RECOGNIZE THE ROBUST CONSENSUS AROUND WHAT CONSTITUTES AN EXCHANGE OF LETTERS UNDER THE CONVENTION**

Federal enforcement of international arbitration awards and agreements is governed by the Convention, which is incorporated into the FAA. *See* 9 U.S.C. § 207. The FAA requires a court to confirm a foreign arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* An enforceable arbitration agreement under the Convention must be in writing, for example, it must be in the form of either "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *See* The Convention at Art. II ¶

1-2, June 10, 1958, 21.3 U.S.T. 2517; *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003) ("[A]n arbitration clause is enforceable only if it was contained in a signed writing or an exchange of letters").  The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation."  *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000).

> **A.**  **The Holding in Standard Bent Glass Corp. Controls and the Parties' Exchange of Letters and Conduct Confirm there was an Agreement to Arbitrate**

As JBDM argued in the District Court, this Court's holding in *Standard Bent Glass Corp.*, is on-point and controlling. 333 F.3d at 442.  In that case, Glassrobots sent a "standard sales agreement" via a letter to Standard Bent Glass which contained an arbitration provision.  *Id*.  After receiving the standard sales agreement, Standard Bent Glass identified changes it requested, none of which were related in any way to the arbitration provision.  *Id.*  After down payments had been made and received, Glassrobots sent Standard Bent Glass a revised sales agreement incorporating nearly all of Standard Bent Glass's proposed changes.  *Id.*  The parties never formally signed a contract, but both parties continued to perform under the agreement.  *Id.* at 443.  Thereafter, Standard Bent Glass noticed a defect with the equipment it had purchased pursuant to the sales agreement and filed suit in district court.  *Id.*  Glassrobots moved to compel arbitration, arguing the standard sales agreement

contained an arbitration provision. *Id.* The District Court compelled arbitration and Standard Bent Glass appealed that decision. *Id.* at 444.

In rendering its ruling, the Court evaluated whether there was an agreement in writing to arbitrate the subject of the dispute under the Convention. *Id.* at 449. More specifically, with the parties' stipulation that there was no contract signed between them, this Court looked, "to whether the incorporated arbitration clause was contained in a series of letters." *Id.* In doing so, this Court found there was, because there was an arbitration clause contained in the standard sales agreement. *Id.* This Court reasoned that, even though that agreement was itself not included in the exchange of letters, it was nonetheless "incorporated by reference in the letters" and that was "all CREFAA requires." *Id.*

The same factual premise is present in this case. Here, the parties exchanged a standard initial memorandum of understanding. Although the arbitration provision was not specifically included in the initial general memorandum, it was contained in all of the subsequent memoranda of understanding attached to numerous subsequent emails and in-person exchanges between the parties. Moreover, much like *Standard Bent Glass Corp.*, the arbitration provision was not the subject of continued negotiations between the parties—here, the $50,000 payment upon execution provision and the date of the first payment were the sole points of contention between the parties. Although the emails between the parties following the

finalization of the MOU did not or need to contain the MOU itself, the parties' references to the MOU, and more specifically the payment terms under the MOU, incorporated the MOU by reference into those communications. Much like the exchange of letters in *Standard Bent Glass Corp.*

Lastly, the parties continued to perform under the agreement—Angle World made two installment payments under the payment schedule attached to the final MOU containing the arbitration provision (modifying one such payment—while recognizing the agreement—in an exchange of emails). SApp147, 174-175. Indeed, those payments specifically referenced the MOU and the number of payments made thereunder and, when Angle World made those two payments, the parties had already ceased negotiations over the terms of the MOU. Again, this is the same as the parties' conduct in *Standard Bent Glass Corp.* Thus, the rulings should be no different here than it was in *Standard Bent Glass Corp.*—this Court should find there was a valid agreement to arbitrate under the requirements of the Convention manifested by an exchange of letters.

## B. The District Court Erred in Holding the Parties' Communications Did Not Amount to an Exchange of Letters

The District Court's opinion does not explain, reference, or analyze whether the many email exchanges between the parties constituted an "exchange of letters or telegrams" under the Convention. More specifically, the District Court's opinion is devoid of any reference to the July 3, 2018 email Angle World sent JBDM with a

first revision to the June 28, 2018 memorandum of understanding's payment schedule. SAppx145. Similarly, the District Court's opinion fails to evaluate JBDM's revised memorandum of understanding sent via email on July 11, 2018, JBDM's additional revisions (following face-to-face meetings) sent via email on July 19, 2018, Angle World's response email, dated July 20, 2018, inviting JBDM to pick up a final copy of the memorandum of understanding the next day, the memorandum of understanding Angle World revised, printed out and handed to JBDM the next day, the signed memorandum of understanding JBDM returned to Angle World via express courier, and the July 26, 2018 email exchange where JBDM confirming the first payment was due on July 28, 2018, in accordance with the payment scheduled attached to the MOU. SAppx150-157, 175. The District Court's opinion similarly fails to acknowledge that Angle World made the first installment payment under the MOU on July 27, 2018. *Id.* The Court never acknowledges the August 25, 2018 email JBDM sent to Angle World's President and Chief Operating Officer reminding them of the upcoming August 28, 2018 installment payment under the MOU, as well as the email communications where Angle World requested an extension for that payment. The Court never mentions that JBDM's granted such extension by email and Angle World's eventual payment of the second installment—

*all of which were done pursuant to the terms of the MOU*.  SAppx145, 176.[3]  The

District Court's opinion also failed to acknowledge the numerous references in the

parties back and forth emails concerning the MOU and the payment schedule

attached thereto, which incorporated by reference the parties' agreement.

The District Court's failure to view these emails and exchanges as an

"exchange of letters" and further consider that the installments payments evidence

that the parties had reached an agreement on the MOU (which contained an

arbitration provision), constitutes reversible error.

## II. THE DISTRICT ERRED BY NOT CONSIDERING THE DISPOSITIVE RULING OF THE BEIJING FOURTH INTERMEDIATE PEOPLE'S COURT WHICH SHOULD BE GRANTED FULL FAITH AND CREDIT UNDER THE PRINCIPLE OF INTERNATIONAL COMITY

The District Court did not address the Ruling of the Beijing Fourth

Intermediate People's Court finding that the parties had entered into a valid and

---

[3] It matters not that these exchanges occurred through electronic communication rather than through traditional letters.  In *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, the Court found there was an agreement to arbitrate in an exchange of letters under the Convention, in part, based on "back-and-forth email exchanges between the parties regarding other features of the sales contract, giving rise to a negative implication that Evonik accepted its other terms."  848 F. Supp. 2d 410, 437 (S.D. N.Y. 2012).  In fact, the instant facts are remarkably similar to *Glencore*, where the parties continued to negotiate their agreement (other than the arbitration provision) in email communications.  Thus, *Glencore* further bolsters JBDM's argument that through its exchange of emails, the parties reached a valid and enforceable agreement to arbitrate their disputes through an exchange of letters or telegrams.

binding agreement, which contained an agreement to arbitrate. SAppx8-24 and Appx6-9.[4] The Ruling is dispositive with respect to the existence of a valid agreement to arbitrate. The Ruling of the Beijing Fourth Intermediate People's Court should be granted a high degree of difference as Angle World itself, and not JBDM, was the party that initiated the declaratory action to determine whether or not CIETAC had jurisdiction over the parties' dispute. SAppx128 and Appx6. Angle World did not appeal the Beijing Fourth Intermediate People's Court's Ruling, but acted accordingly to the Ruling by actively participating in the CIETAC arbitration. For example, Angle World filed multiple pleadings and participated at the hearing. SAppx258. In making its Ruling, the Beijing Fourth Intermediate People's Court carefully examined the exchange of emailed versions of the MOU, the hand-delivery of a final version by Angle World to JBDM, the subsequent negotiation by Angle World to forgive late installment payments, followed by the tender of two installment payments by Angle World under the MOU's revised payment schedule. The payment of two installments by Angle World cannot be explained other than as a part performance of the MOU. The correspondence and actions of the parties were sufficient to find that an agreement existed between the parties and that the arbitration provision contained in the later versions of the MOU

---

[4] Angle World mounted only a feeble response to JBDM's comity arguments in its Reply Brief and at oral argument, never alleging that the Beijing Fourth Intermediate People's Court procedure was unfair or contrary to law. SAppx288.

controlled the adjudication of the parties' disputes. The only logical factual conclusion that can be reached from the Beijing Fourth Intermediate People's Court Ruling is that the parties' agreement was indeed based upon the exchange of emails, which are considered "letters" for purposes of the Convention. *See Glencore Ltd.*, 848 F. Supp. 2d at 437.

The Supreme Court set the legal standards for recognizing the judgments of foreign courts in *Hilton v. Guyot*, 159 U.S. 113 (1895). Under *Hilton*, courts in the United States recognize and defer to foreign-court judgments as a matter of "the comity of this nation" towards other nations. *Id.* at 163-164, 202-203. Although comity is not an "absolute obligation," it is observed unless certain exceptions apply, including where the judgment is "contrary to the policy or prejudicial" to the interests of the United States. *Id.* at 163-164, 233. As considered in *Hilton*, the comity to be extended to foreign-country judgments was a matter of national importance, to be guided by federal and international law, and with due consideration of national policies and interests. Angle World, seeking to avoid the arbitration of the parties' dispute before CIETAC, ***initiated*** the lawsuit on its own behalf before the Beijing Fourth Intermediate People's Court. In that lawsuit, Angle World sought a determination that the July 10 MOU, negotiated and signed in China, was not an enforceable agreement against it and, therefore, the arbitration provision contained therein could not form the basis for CIETAC's jurisdiction over the

parties' disputes.  The Beijing Fourth Intermediate People's Court rejected these arguments and made the following findings:

> Angle World argues that the 710 MoU was only affixed with the official seal of JBDM, but no signature or seal of Angle World has been affixed, and thus the Arbitration Clause in 710 MoU shall not be deemed to be concluded and effective.  With regard to this argument, the Court holds the view that the parties entered into or modified the contracts by email during the course of long-term business, so did the 710 MoU.  In accordance with the facts confirmed by the Court, the 710 MoU was an adjustment and supplement to the 628 MoU.  Angle World did not raise any objections against the newly added arbitration clause when it received 710 MoU.  Therefore, Angle World can be presumed to have accepted the Arbitration Clause in 710 MoU.  Also, as a matter of fact, both parties have actually performed the 710 MoU, so the 710 MoU is the contract that has actually come into effect, and thus the arbitration clause contained in it shall also be effective.  The reasons raised by Angle World cannot be taken as the grounds to deny the effectiveness of 710 MoU.

SAppx157.  Thus, the Beijing Fourth Intermediate People's Court found that: (1) the July 10 MOU is a valid agreement formed by the parties; (2) the arbitration clause contained therein was valid; and (3) CIETAC had jurisdiction over the parties' disputes arising out of the July 10 MOU.  Angle World *initiated* and fully participated in the declaratory action and must be bound by the ruling of the Beijing Fourth Intermediate People's Court it sought.  It cannot be considered inequitable or unreasonable for the District Court to give legal effect to a final judgment issued a Chinese court in an action that Angle World initiated.  *See Clientron Corp. v. Devon IT, Inc*., 125 F. Supp. 3d 521 (E.D. Pa. 2015).  Angle World did not appeal the ruling.  The fact that Angle World failed to appeal the Beijing Fourth Intermediate People's

Court's "decision leaves no question that it is final for the purposes of evaluating this issue and weighs in favor of deferring to the Beijing Fourth Intermediate People's Court's decision. *Id.* at 526.

In *Somportex Ltd. v. Philadelphia Chewing Gum Corp.* 453 F.2d 435 (3d Cir. 1971), this Court held that it would not disturb an English Court's adjudication of jurisdiction over the United States defendant even when the English plaintiff received a default judgment rather than a judgment following a full adversary hearing, such as Angle World was afforded. 453 F.2d 435, 442 (3d Cir. 1971). The standard for comity in *Somportex* would undoubtedly include a ruling where the complaining party itself filed and lost its case in a foreign court. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect. *Somportex Ltd.*, 453 F.2d at 440; *see also Hilkmann v. Hilkmann*, 816 A.2d 242, 245 (Pa. Super. 2003) (*quoting Drakulich v. Drakulich*, 482 A.2d 563, 565 (1984); *Sinha v. Sinha*, 834 A.2d 600 (Pa. Super. 2003). The Beijing Fourth Intermediate People's Court's carefully written Ruling applying Chinese law to the agreement should be given the same force and effect as that of any United States court, precluding Angle World from arguing the formation and validity of the parties' agreement again before the District Court.

# CONCLUSION

In rendering its decision, the District Court's failure to consider whether certain emails and written communications between the parties constituted an "exchange of letters" pursuant to the requirements of the Convention, and that an agreement to arbitrate had been reached by the parties constitute reversible error. Once those written communications are considered under controlling precedent it becomes clear the parties' "exchange of letters" is more than sufficient to find an enforceable agreement to arbitrate under the Convention. Lastly, the District Court's failure to address JBDM's argument that the Beijing Fourth Intermediate People's Court's opinion, on Angle World's own declaratory judgment action, should control under the principles of international comity further constitutes reversible error. As a result, JBDM respectfully requests that the District Court be reversed, that this Court hold there is an enforceable agreement to arbitrate, pursuant to the requirements of the Convention, and remand this action back to the District Court to confirm the arbitration award.

Respectfully submitting March 14, 2022.

By: */s/ William J. Burton*

Richard A. Kaye (GA No. 409313)
**BARNES & THORNBURG, LLP**
3475 Piedmont Road, N.E., Suite 1700
Atlanta, Georgia 30305
Telephone: (404) 264-4086
E-mail: Rich.Kaye@btlaw.com

William J. Burton (PA No. 322269)
**BARNES & THORNBURG, LLP**
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3447
E-mail: William.burton@btlaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certified that this brief complies with the type-volume limitation of the Fed. R. App. P. 32(a)(7)(B)(i).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(g), the brief contains 6,622 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2012 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the work count feature of this word processing system in preparing this certificate.

3.     In addition, pursuant to the Third Circuit Local Appellate Rule 31.1(c), I certify that the text of the brief filed with the Court via CM/ECF is identical to the text of the copies. I further certify that the electronic version of the brief has been scanned for viruses, which is updated continuously, and is free of virus.


Dated: March 14, 2022                    _/s/ William J. Burton_____
                                         William J. Burton (Pa No. 322269)

## CERIFICATE OF SERVE

Pursuant to Third Circuit Local Appellate Rule 46.1, I, William Burton, hereby certiy that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Date: March 14, 2022                              By: _/s/ William J. Burton_____

## <u>CERIFICATE OF SERVE</u>

I certify that on this 14th day of March, 2020, I electronically filed the foregoring with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the Court's CM/ECF system. Counsel of record for all the parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ William J. Burton*
William J. Burton (Pa No. 322269)